**Harry ZAROOGIAN, Alias, etc.,**
**Defendant, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 6712.**

United States Court of Appeals
First Circuit.

Nov. 1, 1966.

---

Eugene A. Liberati, Providence, R. I., with whom Harold C. Arcaro, Jr., and Thomas R. DiLuglio, Providence, R. I., were on the brief, for appellant.

Alton W. Wiley, Asst. U. S. Atty., with whom Frederick W. Faerber, Jr., U. S. Atty., was on the brief, for appellee.

Opinion of the Court

Before ALDRICH, Chief Judge, Mc-ENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Defendant appeals his conviction, after jury trial, under four counts of an information charging violations of the federal wagering tax laws, 26 U.S.C. §§ 4401, 4411, 7203, and 7262. Two counts (3 and

7) under section 7203 charged wilful failure to pay the special occupational tax required of one engaged in accepting wagers on behalf of any person liable for the ten per cent excise tax on wagers imposed by section 4401. The remaining two counts (4 and 8) under section 7262 charged merely failure to pay such tax.[1]

The government's principal witness was a special agent of the Internal Revenue Service who testified that in the course of investigating wagering activities, he visited a bar on some fourteen different occasions within a five-week period, placing twenty-two wagers with defendant and observing many other persons placing bets; that defendant used a telephone to call in the names of horses, names of tracks, and amounts of money wagered; that he received calls and announced race results; and that he paid winnings from funds on his person. On one occasion the special agent questioned defendant about money owing him from one race. He testified that defendant made a telephone inquiry, and thereafter paid the amount due, saying, "We always make mistakes. It is a lucky thing the office still had the records."

Defendant was subsequently arrested by another agent, who testified that he asked defendant if he possessed a stamp; that defendant replied that he did not because he did not accept wagers; and that on being asked if he would have a stamp if he did accept wagers, defendant said that he would. The defense consisted of extensive cross-examination of the major prosecution witness and direct examination of two witnesses who testified that no wagering had taken place at the bar. The jury returned verdicts of guilty on the four counts here involved.

Defendant's first contention[2] is that the special agent's testimony should be rejected in toto, since his action in wagering constituted a violation of

---

1. The jury returned verdicts of not guilty on four additional counts charging defendant with wilful and nonwilful failure to pay the occupational tax while engaging as a principal in the business of accepting wagers.

2. We pass the argument that, since he was not risking any of his personal funds, the special agent's transactions with defendant were not wagers. Leone v. United States, 1 Cir., 1965, 340 F.2d 317.

local law. There is here, however, not only a complete absence of timely objection or motion to suppress, but no suggestion whatsoever that the defendant was entrapped or that the agent's activity infringed any constitutional right personal to the defendant. A rule excluding otherwise competent and credible evidence because of the way it was obtained is justified only where the police activity complained of ought to be deterred and no other remedy is likely to be effective, and where an invasion of the defendant's personal rights gives him standing to complain of the untoward activity. We do not find either of these conditions satisfied here.

■ A second ground of appeal is that there was insufficient evidence that defendant was receiving wagers "on behalf of a person liable for the tax". To this we respond that the record as a whole, and specifically defendant's reference to records kept by "the office", entitled the jury to find that defendant was not acting as a principal. That the real principal would be liable for the tax is obvious. See 26 U.S.C. § 4401(c).

■ Defendant next argues that the district court erred in refusing to compel disclosure of the identity of an informer who accompanied the principal witness on his first visit to the bar. The evidence reveals that the informer's role was confined to guiding the agent to the bar, after which the agent observed for himself all of the events that were the subject of his testimony. There was no testimony concerning what the informer may have said to the Revenue Service before the investigation. Under these circumstances we rule as we did in Marderosian v. United States, 1 Cir., 1964, 337 F.2d 759, cert. denied, 380 U.S. 971, 85 S.Ct. 1328, 14 L.Ed.2d 268, that the district judge committed no error in refusing disclosure. United States v. Russ, 2 Cir., 1966, 362 F.2d 843. In Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, cited by defendant, the evidence suggested strongly that the informer might have been in a position

that would have made him a valuable material witness for the defense. We find no such suggestion here.

■ A fourth contention is that wilfulness was not established, since the only evidence was the defendant's response to questions about the wagering tax stamp after his arrest, when he had not been advised of his constitutional rights. There is no merit in this point. To the arresting agent's straightforward question inquiring why he did not have a stamp, defendant answered unequivocally that he did not accept wagers. Defendant's trial antedated the decision in Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and counsel did not object to the testimony.

The defendant's strongest contention is that the "sentences" under counts 4 and 8 were imposed erroneously and should be vacated. He makes two arguments. The first is that, since counts 4 and 8 charge non-wilful crimes, these are lesser included offenses included in the wilful offenses described in counts 3 and 7 and therefore should not be the basis for the imposition of separate sentences. United States v. Goldman, 3 Cir., 1965, 352 F.2d 263. The second argument addresses itself to our dicta in Ekberg v. United States, 1 Cir., 1948, 167 F.2d 380, 385–386, to the effect that, while sentences may be imposed on counts charging both a more inclusive and a lesser included offense, they must be concurrent. Defendant says that as to count 4, the "judgment of probation for one year" is not concurrent with the judgment of a fine and thirty days' imprisonment on the more inclusive count 3. As to count 8, while its one year probation parallels that imposed under its more inclusive count 7, defendant argues that section 7262, on which count 8 is based, permits only a fine, which would be additional to and not concurrent with the one year probation based on count 7.

In approaching this tangle, our first inquiry must be to ascertain what sentencing action was taken by the district court. The relevant language in the

order of "Judgment and Commitment" is the following:

"IT IS ADJUDGED that the defendant is hereby committed * * * for imprisonment for a period of thirty days and pay a fine of One Thousand Dollars ($1,000.00) on Count No. 3 and be placed on probation for a period of one year on each of Counts Nos. 4, 7 and 8; probationary periods to begin from and after the expiration of the sentence on Count 3 and to be concurrent."

The district judge, of course, was fulfilling his function under Fed.R.Crim.P. 32(e), which specifies that after conviction a "defendant may be placed on probation as provided by law." The underlying law is the National Probation Act of 1925, as amended, 18 U.S.C. § 3651, which states that a trial judge "may suspend the imposition or execution of sentence and place the defendant on probation."

 Better practice, therefore, dictates that when the court wishes to place the defendant on probation it clearly indicate as to each count that it is either (1) imposing a sentence, suspending its execution, and placing the defendant on probation, or (2) suspending imposition of a sentence and placing the defendant on probation. While we believe that the second alternative was what was intended in the present case, Commonwealth ex rel. Paige v. Smith, 1938, 130 Pa. Super. 536, 539–543, 198 A. 812, 813–815, the court's failure to say so specifically led to a misunderstanding that the defendant was receiving "sentences" of probation on counts 4, 7, and 8. Suspending imposition of sentence and placing on probation is clearly not a sentence. Bartlett v. United States, 10 Cir., 1948, 166 F.2d 928.

 The only remaining question on this issue is whether the district judge could have legally imposed sentences on counts 4, 7, and 8, such power being the necessary predicate for suspending sentence and placing on probation. We think it is clear that he could have done

so, provided that sentences in each group (3 and 4, 7 and 8) were to run concurrently, that they did not exceed the maximum limits prescribed for the greater crimes charged in counts 3 and 7, and that sentences imposed on the lesser offenses were confined to fines between the statutory minimum and maximum. Ekberg v. United States, supra. See United States v. Gainey, 1965, 380 U.S. 63, 65, 85 S.Ct. 754, 13 L.Ed.2d 658.

We are mindful of a dictum in United States v. Goldman, 3 Cir., 1965, 352 F.2d 263, 265–266, to the effect that "though sections 7262 and 7203 describe different offenses, the accused in such a case as this has committed only one wrong" and that "there may be a serious question whether double punishment for such a single wrong was intended by Congress or can lawfully be imposed." We think the short answer to this pertinent question is that concurrent sentencing within the limitations we have described precludes both double punishment and successive trials. Moreover, if on review the conviction on the greater offense were reversed because of a fatal deficiency of evidence as to wilfulness, the defendant would still be under the obligation of his sentence for the lesser crime which no error has tainted. In the case at bar, assuming the convictions on counts 3 and 7 were invalidated, such sentence could be imposed only if appellant violated probation. This observation indicates that better practice in such a case might be the immediate imposition of sentence for the lesser offenses, followed by suspension of execution, and an order of probation. We are, of course, talking only about situations involving lesser included offenses.

We make the additional observation that the dictum in United States v. Goldman, supra, seems to have been influenced by such cases as Wilson v. United States, 9 Cir., 1944, 145 F.2d 734, 736, and cases cited therein. All of these concern convictions under the Bank Robbery Statute, 18 U.S.C. § 2113, which describes in subsections (a) and (b) the crime of bank robbery or its attempt, and pre-

scribes in subsection (d) a much greater penalty if any offense committed in (a) or (b) is accompanied by assault or the use of a dangerous weapon. Note is frequently taken in such cases not only of the legislative history of this section but also of the concession of government counsel in Holiday v. Johnston, 1941, 313 U.S. 342, 61 S.Ct. 1015, 85 L.Ed. 1392, that the statute does not create two crimes but merely prescribes alternative sentences for the same crime. In each such case, since the court construed the statute as authorizing only one sentence, it had no occasion to consider the impact of concurrent sentences. In fact, all such cases that have come to our attention have involved not only separate but also consecutive sentences and, therefore, double punishment. In this case the statutory sections describe two distinct offenses and the sentences run concurrently.

Affirmed.[3]

---

3. Although the parties did not brief or argue the effect on this case of United States v. Costello, 2 Cir., 1965, 352 F.2d 848, cert. granted, 1966, 383 U.S. 942, 86 S.Ct. 1195, 16 L.Ed.2d 205, execution of the judgment will be stayed pending the Supreme Court's decision in that case.